UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| REFINED METALS CORPORATION, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| vs. | ) | No. 1:19-cv-4578-JMS-DLP |
| | ) | |
| NL INDUSTRIES, INC., | ) | |
| | ) | |
| *Defendant*. | ) | |

# ORDER

In this action, Plaintiff Refined Metals Corporation ("Refined Metals") seeks payment and a declaratory judgment pursuant to the Indiana Environmental Legal Action statute ("ELA") from Defendant NL Industries, Inc. ("NL") to help cover the costs of the cleanup of hazardous substances on a property sold by NL to Refined Metals and used by both entities to operate a lead smelting facility. NL has filed a Motion to Dismiss based on the statute of limitations, which is now ripe for the Court's decision. [Filing No. 8.]

## I.
### STANDARD OF REVIEW

The Federal Rules of Civil Procedure require only a "short and plain statement of the claim showing that the pleader is entitled to relief." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). To that end, the complaint need only provide the defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Erickson*, 551 U.S. at 93 (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted). In order to survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must contain allegations that collectively "state a claim to relief that is plausible on its face." *Id*. (internal quotations omitted) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A

1

claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff. *Alarm Detection Sys., Inc. v. Vill. of Schaumburg*, 930 F.3d 812, 821 (7th Cir. 2019). This review is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).

A plaintiff is not required to plead facts that overcome affirmative defenses based on the statute of limitations. *NewSpin Sports, LLC v. Arrow Elecs., Inc.*, 910 F.3d 293, 299 (7th Cir. 2018). Accordingly, dismissing a complaint as untimely based on the pleadings is disfavored, as a statute of limitations defense generally turns on facts not before the Court at this stage. *See Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (citations omitted). Nevertheless, if the complaint and the supporting documents contain all of the elements of a statute of limitations defense, dismissal under Rule 12(b)(6) is proper. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *see also Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (explaining that, in ruling on a motion to dismiss, "a court may consider, in addition to the allegations set forth in the complaint itself, documents that are attached to the complaint, documents that are central to the complaint and are referred to in it, and information that is properly subject to judicial notice").

**II.**
**BACKGROUND**

**A. The Complaint**

Refined Metals initially filed its Complaint in the Marion County, Indiana Superior Court, and NL removed the action to this Court based on diversity jurisdiction.[1] [Filing No. 1.] The following facts from Refined Metals' Complaint are accepted as true for purposes of deciding the Motion to Dismiss, consistent with the standard of review outlined above. Where appropriate, facts from the documents referenced in the Complaint or documents subject to judicial notice are also included, as Refined Metals agrees that such documents may be properly considered in ruling on the Motion to Dismiss. [Filing No. 16 at 20]; *Williamson*, 714 F.3d at 436.

NL, or one of its predecessors, acquired a property located at 3700 South Arlington Avenue in Beech Grove, Indiana ("the Property") in or around 1966. [Filing No. 1-2 at 1.] NL owned the Property from 1966 until 1980 and, during that time, built a lead smelting plant ("the Facility") on the Property. [Filing No. 1-2 at 1.] The Facility produced lead alloys by smelting spent lead materials in a furnace and then adding other materials to the recycled lead, a process known as "refining." [Filing No. 1-2 at 1.] In 1980, NL sold the Property to Refined Metals. [Filing No. 1-2 at 2.] Refined Metals operated the Facility, smelting secondary lead materials into lead and

---

[1] As discussed below, Refined Metals failed to properly plead diversity jurisdiction in its previous lawsuit against NL in this Court, because it failed to properly allege that the amount in controversy exceeded $75,000, "exclusive of interests and costs." *See Refined Metals Corp. v. NL Indus., Inc.*, 2018 WL 4592110, at *7 (S.D. Ind. Sept. 25, 2018), *aff'd*, 937 F.3d 928 (7th Cir. 2019) (citing 28 U.S.C. § 1332(a)). Here, however, NL has properly alleged that the parties are citizens of different states and that the amount in controversy exceeds $75,000, exclusive of interests and costs. *See* 28 U.S.C. § 1332(a)(1). Given Refined Metals' lack of objection to these allegations, and its own allegations in the previous lawsuit concerning the parties' citizenship and the amount in controversy, the Court concludes that diversity jurisdiction exists in this case.

producing refined lead alloys, from 1980 until 1995. [Filing No. 1-2 at 2.] Refined Metals continued to own the Property until 2017. [Filing No. 1-2 at 2.]

Beginning in the late 1970s, the federal government, through the Environmental Protection Agency ("EPA") and the Occupational Safety and Health Administration of the Department of Labor, promulgated environmental regulations governing lead emissions and wastewater discharges of pollutants from secondary lead manufacturing operations, such as those conducted at the Facility. [Filing No. 1-2 at 2-3.] The State of Indiana, through the Indiana Department Environmental Management ("IDEM"), also adopted regulations concerning lead emissions during the same period. [Filing No. 1-2 at 2.]

In 1990, the EPA filed a lawsuit against Refined Metals, alleging that Refined Metals violated the Resource Conservation and Recovery Act and the Clean Air Act in its operation of the Facility, and the IDEM intervened as a plaintiff. [Filing No. 8-5 at 5.] In 1998, Refined Metals, the EPA, and the IDEM entered into a Consent Decree that provided for remedial actions to be taken by Refined Metals to address the release of hazardous substances resulting from operation of the Facility and to remove soil that had been contaminated with lead. [Filing No. 1-2 at 3-4; *see also* Filing No. 8-5.]

Refined Metals alleges that NL's previous operation of the Facility, as well as its initial design and construction of the Facility, contributed to the release of hazardous substances to the surface and subsurface soils on the Property, which posed a risk to human health and to the environment that endured after the sale of the Property. [Filing No. 1-2 at 5.] Therefore, Refined Metals seeks: (1) the costs of remedial actions to address the hazardous substances released at the Facility, to the extent such costs are recoverable under the ELA; and (2) a declaratory judgment declaring that NL is responsible for the environmental cleanup costs incurred and that NL must

indemnify or make contribution to any future costs incurred by Refined Metals in connection with cleaning up contamination on the Property. [Filing No. 1-2 at 5-6.]

**B. Prior Lawsuit filed by Refined Metals**

On July 28, 2017, Refined Metals filed a complaint in this Court ("the first lawsuit"), alleging that it was entitled to recover environmental cleanup costs from NL under the federal Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") and under the ELA. [Filing No. 1 in Case No. 1:17-cv-02565-SEB-TAB.] NL moved to dismiss Refined Metals' claims, and the Court granted the motion. [Filing No. 8-3 at 2]; *Refined Metals Corp. v. NL Indus., Inc.* ("*Refined I*"), 2018 WL 4592110, at *1 (S.D. Ind. Sept. 25, 2018). Specifically, the Court concluded that the CERCLA claims were untimely, because the applicable three-year statute of limitations began to run upon the entry of the Consent Decree in 1998 and expired in 2001, long before the action was filed. [Filing No. 8-3 at 14-16]; *Refined I*, 2018 WL 4592110, at *6. As to the ELA claims, the Court first concluded that Refined Metals had not properly pled the existence of diversity jurisdiction, and therefore the only remaining basis for jurisdiction over the ELA claims was supplemental jurisdiction. [Filing No. 8-3 at 17-18]; *Refined I*, 2018 WL 4592110, at *7. The Court then concluded that it was appropriate to relinquish supplemental jurisdiction over the state law ELA claim and dismiss it without prejudice, relying in part on the fact that, due to conflicting state law precedent concerning the ELA's statute of limitations, it was "not at all obvious how the state-law claims should be decided." [Filing No. 8-3 at 18-19]; *Refined I*, 2018 WL 4592110, at *7-8.

The Seventh Circuit Court of Appeals affirmed this Court's dismissal of the action, agreeing that Refined Metals' CERCLA claims were untimely. [Filing No. 8-4 at 2-14]; *Refined Metals Corp. v. NL Indus. Inc.* ("*Refined II*"), 937 F.3d 928, 929-30 (7th Cir. 2019). The Court of

Appeals further concluded that Refined Metals had waived any argument that this Court had erred in finding that diversity jurisdiction was not properly pled or abused its discretion in relinquishing supplemental jurisdiction over the ELA claim. [Filing No. 8-4 at 15-16]; *Refined II*, 937 F.3d at 935-36.

**III.**
**DISCUSSION**

The Court notes at the outset that, because all of the relevant dates are contained within the Complaint or the other documents that the Court may consider at this stage, this is the kind of case that it susceptible to a statute of limitations analysis at the motion to dismiss stage. Indeed, the dispute over which statute of limitations applies to the facts as they are alleged is a legal one.

**A. Relevant Legal Background**

"Congress enacted CERCLA in 1980 to promote the timely cleanup of hazardous waste sites and to ensure that the costs of such cleanup efforts were borne by those responsible for the contamination." *CTS Corp. v. Waldburger*, 573 U.S. 1, 4 (2014) (internal quotations and citations omitted). CERCLA provides for "cost recovery" actions and two different types of "contribution" actions. *See*, *e.g.*, *Bernstein v. Bankert*, 733 F.3d 190, 200-03 (7th Cir. 2013). Where a party has been subjected to a civil lawsuit, or resolved its liability to the United States or to a state through certain administrative or judicially approved settlements, the party may then recover its cleanup expenditures through a contribution action. *Id.* Where neither of those things have occurred to resolve a party's liability, the party can still recover certain cleanup costs through a cost recovery action. *Id.* Contribution claims under CERCLA that are triggered by the resolution of liability to the United States or to a state are subject to a three-year statute of limitations. 42 U.S.C. § 9613(g)(3). This Court and the Seventh Circuit have already determined that Refined Metals' claim under CERCLA was this sort of contribution claim, which accrued upon the entering of the

6

Consent Decree in 1998, and for which the statute of limitations expired in 2001. *Refined I*, 2018 WL 4592110, at *6; *Refined II*, 937 F.3d at 929-30.

The ELA—which was originally enacted in 1997, became effective in February 1998, and was amended in 2007—provides for the recovery of reasonable costs of removal or remedial action involving hazardous substances against parties who caused or contributed to the release of such substances. *Bernstein*, 733 F.3d at 216 (citing *Cooper Indus., LLC v. City of South Bend*, 899 N.E.2d 1274, 1280 (Ind. 2009); Ind. Code § 13-30-9-2).

As originally enacted, the ELA did not contain its own statute of limitations. *Bernstein*, 733 F.3d at 217. "That changed in 2011, when the Indiana General Assembly enacted Ind. Code § 34-11-2-11.5." *Id.* at 216 n.16; *see also Elkhart Foundry & Mach. Co. v. City of Elkhart Redevelopment Comm'n for City of Elkhart*, 112 N.E.3d 1123, 1127 (Ind. Ct. App. 2018), *trans. denied*, 124 N.E.3d 39 (Ind. 2019) (concluding that § 34-11-2-11.5 is a statute of limitations currently applicable to claims under the ELA).[2]

Prior to 2011, courts looked to other provisions of Indiana law to determine the applicable statute of limitations in a particular ELA action, which varied depending on the nature of the underlying claim. *Bernstein*, 733 F.3d at 219. If the claim was based on damage to real property, then the court applied the six-year statute of limitations for property damage claims, which begins to run when a claimant (or the claimant's predecessor in interest) knows, or in the exercise of due

---

[2] The Court acknowledges, as it did in the first lawsuit, that there is some inconsistency in Indiana law regarding whether § 34-11-2-11.5 constitutes a statute of limitations or merely a limit on damages. *See Schuchman/Samberg Investments, Inc. v. Hoosier Penn Oil Co. Inc.*, 58 N.E.3d 241, 246 n.5 (Ind. Ct. App. 2016) (concluding that § 34-11-2-11.5 is not a statute of limitations but instead "imposes a limitation on the types of damages recoverable in an ELA claim in the form of a ten-year look-back period"); *but see Elkhart*, 112 N.E.3d at 1127 (concluding that the discussion in *Schuchman/Samberg* "was dicta and therefore nonprecedential" and reaching the opposite result). The Court need not resolve this inconsistency here.

7

diligence should have known, of the contamination. *Id*. at 218-19 (discussing *Peniel Group, Inc. v. Bannon*, 973 N.E.2d 575 (Ind. Ct. App. 2012)). On the other hand, if the claim was not based on property damage and instead sought contribution or recovery of environmental cleanup costs, then it was subject to a ten-year "catch-all" statute of limitations contained in Ind. Code § 34-11-1-2. *Bernstein*, 733 F.3d at 219 (citing *Pflanz v. Foster*, 888 N.E.2d 756, 758 (Ind. 2008)). In environmental costs actions, the ten-year catch-all statute of limitations begins to run when the plaintiff is ordered to clean up the property. *Pflanz*, 888 N.E.2d at 759.

The enactment of § 34-11-2-11.5 in 2011 changed the ELA statute of limitations analysis. *See Elkhart*, 112 N.E.3d at 1126-27. Under that provision, the ten-year period does not "start running, once and for all, when the plaintiff incurs its 'first' cleanup cost. Rather, a new ten-year period starts to run with the incurrence of each additional cleanup cost." *Id*. at 1128. In other words, the plaintiff may recover any cleanup costs incurred within the ten-year period preceding the filing of the lawsuit. *Id*.

Under Indiana law, "the statute of limitation in effect at the time a lawsuit is commenced governs an action regardless of whether it lengthens or shortens the time allowed for bringing suit . . . ." *Richmond State Hosp. v. Brattain*, 961 N.E.2d 1010, 1013 (Ind. 2012). "However, a new statute of limitations cannot revive a claim which was foregone under the prior statute of limitations before passage of the new one." *Connell v. Welty*, 725 N.E.2d 502, 506 (Ind. Ct. App. 2000) (citing *Indiana Dept. of State Revenue, Inheritance Tax Div. v. Puett's Estate*, 435 N.E.2d 298, 301 (Ind. Ct. App. 1982)); *see also McKinney v. Springer*, 8 Blackf. 506, 507 (Ind. 1847) ("[W]hilst the old statute was in force, and before the suit was commenced, the plaintiff's right of action was barred by that statute; and we are clearly of opinion, that no statute subsequently passed could renew the defendant's liability.").

### B. The Parties' Arguments

NL first argues that CERCLA's three-year statute of limitations for contribution actions governs this dispute because it preempts any contrary statute of limitations that could apply under Indiana law. [Filing No. 9 at 26-36.] Specifically, NL asserts that any statute of limitations that is longer than three years directly conflicts with federal law and undermines CERCLA's purpose of ensuring swift action to clean up environmental contamination. [Filing No. 9 at 19-22.] Further, NL argues that CERCLA's savings clause—42 U.S.C. § 9614, also referred to as CERCLA § 114—does not apply because it cannot be used to undermine other provisions of the statute, and Refined Metals cannot use the ELA to recover the very same costs that it unsuccessfully attempted to recover under CERCLA. [Filing No. 9 at 29-33.]

NL then argues that § 34-11-2-11.5 cannot apply, because Refined Metals' ELA claims had already expired before the statute was enacted. [Filing No. 9 at 33-36.] Specifically, NL asserts that the claims were subject to a six-year statute of limitations that began to run when Refined Metals knew or should have known about the contamination. [Filing No. 9 at 35-36.] NL asserts that Refined Metals knew about the contamination in 1990 when it was sued by the EPA, in 1998 when the Consent Decree was entered, and certainly by June 21, 2000, when it sent NL a formal notice of intent to sue. [Filing No. 9 at 36.] Accordingly, NL argues, at the very latest, the six-year statute of limitations expired on June 21, 2006. [Filing No. 9 at 36.] In addition, NL argues that § 34-11-2-11.5 cannot apply because it is not a statute of limitations at all, but instead is a statute of repose. [Filing No. 9 at 37-38.] Finally, NL asserts that Refined Metals' claim for declaratory relief must be dismissed if its claim for costs is time-barred. [Filing No. 9 at 38-40.]

Refined Metals responds that CERCLA does not preempt its recovery under the ELA. [Filing No. 16 at 20-29.] Specifically, Refined Metals argues that, because it no longer can pursue

9

a claim for contribution under CERCLA, and because no CERLCA liability has already been determined that could give rise to double recovery under the ELA, there can be no direct conflict between the ELA and CERCLA in this case. [Filing No. 16 at 23-29.] Refined Metals argues that the ELA claim is different from a CERCLA claim, because CERCLA creates strict joint liability among responsible parties, whereas the ELA only establishes liability for each party's actual contributions to the contamination. [Filing No. 16 at 23-24.] Furthermore, Refined Metals asserts, the savings clause bars construing CERCLA to preempt state law in the absence of double recovery. [Filing No. 16 at 24-29.]

Refined Metals further argues that the ten-year statute of limitations created in § 34-11-2-11.5 applies because its cause of action did not accrue until 2007, when the ELA was amended to expressly permit persons who contributed to the contamination to make a claim for cleanup costs, and therefore the then-applicable ten-year "catch-all" statute of limitations had not expired before the new statute of limitations was enacted. [Filing No. 16 at 29-34.] Accordingly, it asserts, the 2011 statute applies, and Refined Metals can proceed with this action to recover costs incurred after July 28, 2007, ten years before its commencement of the first lawsuit. [Filing No. 16 at 34-36.] Refined Metals also asserts that § 34-11-2-11.5 is indeed a statute of limitations, not a statute of repose. [Filing No. 16 at 40-41.] Finally, Refined Metals argues that it may seek a declaratory judgment entitling it to contribution from NL for future cleanup costs. [Filing No. 16 at 41.]

In reply, NL reiterates its argument that CERCLA preempts Indiana law because any statute of limitations that could apply under Indiana law is directly contrary to CERCLA's three-year statute of limitations. [Filing No. 17 at 7-21.] It argues that the savings clause only applies to cost contribution actions brought by a state, rather than a private party like Refined Metals. [Filing No. 17 at 8-10.] NL also argues that all of the cases cited by Refined Metals are

10

distinguishable for various reasons. [Filing No. 17 at 11-17.] NL asserts that allowing Refined Metals to pursue a claim "when both this Court and the Seventh Circuit have found it does not have one, would effectively reapportion costs incurred under CERCLA in a fashion that CERCLA itself would not countenance." [Filing No. 17 at 21.]

NL also argues that Refined Metals had a valid cause of action under the ELA as soon as the ELA became effective in 1997, even before the statute was amended in 2007. [Filing No. 17 at 21-24.] NL maintains that the statute of limitations had expired prior to both the 2007 and 2011 amendments to the ELA, and therefore neither amendment could have revived the expired claims. [Filing No. 17 at 24.]

Refined Metals filed a sur-reply, in which it argues that NL's contention that the CERCLA savings clause only applies to actions filed by a state is not supported by the plain language of the provision or the caselaw cited in the reply brief. [Filing No. 23 at 1.] Refined Metals further argues that its ELA claim is different from a CERCLA claim because the ELA claim includes only costs incurred on or after July 28, 2007, and only the portion of those costs which NL's actions caused or contributed to, whereas CERCLA imposes strict joint and several liability on all responsible parties. [Filing No. 23 at 2.]

### C. Preemption Analysis

Although courts must begin with the presumption "that Congress does not intend to supplant state law," *Augutis v. United States*, 732 F.3d 749, 753 (7th Cir. 2013), there are three ways in which federal law may nonetheless preempt a state statute: (1) express preemption; (2) conflict (or implied) preemption; and (3) field (or complete) preemption, *Hoagland v. Town of Clear Lake*, 415 F.3d 693, 696 (7th Cir. 2005) (citations omitted). As relevant here, "[c]onflict preemption exists if it would be impossible for a party to comply with both local and federal

11

requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (quoting *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995)); *see also Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1050 (7th Cir. 2013) ("[T]he presumption against preemption of state laws dictates that a law must do 'major damage' to clear and substantial federal interests before the Supremacy Clause will demand that state law surrenders to federal regulation.") (citations omitted).[3]

The Seventh Circuit has observed that "[t]he precise contours of CERCLA preemption over state environmental cleanup actions or municipal ordinances that affect federal removal or remedial actions are not easy to discern." *Village of DePue v. Exxon Mobil Corp.*, 537 F.3d 775, 786 (7th Cir. 2008). Nevertheless, it is clear that "CERCLA's preemptive scope is not total. The statutory text states expressly, in several provisions, that at least some claims under state law are permitted to proceed." *Id.* (citing 42 U.S.C. §§ 9613, 9614, 9652, 9658, and 9659)). For example, Refined Metal relies upon CERCLA § 114, 42 U.S.C. § 9614, which states that "[n]othing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State." 42 U.S.C. § 9614(a). The provision further provides that any person who receives compensation for claims under CERCLA shall be precluded from recovering compensation for the same claims under any other state or federal law, and vice versa. 42 U.S.C. § 9614(b). Consistent with this statutory language, courts have generally recognized that CERCLA and state environmental regulation statutes, including the ELA, can coexist. *CTS Corp.,* 573 U.S. at 18 ("CERCLA, it must be remembered, does not provide a complete remedial framework. The statute does not provide a

---

[3] To the extent that Refined Metals relies upon state law to supply the preemption standard, state law is in accord. *See Kennedy Tank & Mfg. Co. v. Emmert Indus. Corp.*, 67 N.E.3d 1025, 1029 (Ind. 2017) (relying on federal law to supply the same preemption standards outlined above).

12

general cause of action for all harm caused by toxic contaminants."); *Niagara Mohawk Power Corp. v. Chevron U.S.A., Inc.*, 596 F.3d 112, 138 (2d Cir. 2010) (recognizing that "CERCLA does not expressly preempt applicable state law" and "is not such a comprehensive scheme that it cannot be supplemented by state law"); *Reed v. Reid*, 980 N.E.2d 277, 288 (Ind. 2012) (noting that CERCLA and the ELA "are not the same").

NL, apparently recognizing this principle, does not argue that express or field preemption applies. [Filing No. 17 at 8 ("NL is not claiming that the entire ELA is preempted.").] Instead, NL asserts that the conflict between CERCLA's and the ELA's statutes of limitations means that CERCLA preempts the ELA only as to the statute of limitations issue in this particular case. [Filing No. 17 at 8.] The Court agrees that, in this case, the ELA statute of limitations is preempted by the CERCLA statute of limitations due to direct conflict between the provisions. In bringing an ELA claim, Refined Metals is essentially attempting to recover the same costs that it was unable to recover through its CERCLA contribution claim.

Refined Metals asserts that the ELA and CERCLA claims are not precisely the same, arguing that CERCLA claims result in strict, joint and several liability whereas ELA claims equitably apportion costs among responsible parties. [Filing No. 23 at 3.] This argument is a misstatement of the law, because in CERCLA contribution actions, "the district court is directed to allocate contribution costs under section 113(f) 'using such equitable factors as the court determines are appropriate.'" *NCR Corp. v. George A. Whiting Paper Co.*, 768 F.3d 682, 689 (7th Cir. 2014) (citing 42 U.S.C. § 9613(f)(1)). This is strikingly similar to the equitable allocation scheme established by the ELA, which directs courts to "allocate the costs of the removal or remedial action in proportion to the acts or omissions of each party, . . . using legal and equitable factors that the court determines are appropriate." Ind. Code § 13-30-9-3(a). Refined Metals

13

further argues that the temporal scope of the ELA claim is different, as it seeks only costs incurred after July 2007. [Filing No. 23 at 5.] Again, this argument misses the point, because those same costs could have been recovered through a timely-filed CERCLA action. As the Court pointed out in *Refined I*, there does not appear to be any reason that a court could not enter a declaratory judgment in a timely CERCLA action to permit the plaintiff to recover future costs not yet incurred, such as those sought by Refined Metals here. *Refined I*, 2018 WL 4592110 at *6; *see also City of Gary v. Shafer*, 683 F. Supp. 2d 836, 854 (N.D. Ind. 2010) (explaining that a declaratory judgment is the appropriate remedy under CERCLA where liability has been determined but it is not possible to determine the cost of future cleanup).

Accordingly, while CERCLA and the ELA may not be the same in every respect, the claims under each statute are essentially the same in this case. If the Court were to apply any statute of limitations other than that established by CERCLA, the Court would possibly be permitting Refined Metals to recover costs that are no longer recoverable under CERCLA.[4] This would not be a permissible result, as state law cannot be used to circumvent federal limits on recovery. Specifically, the Seventh Circuit has indicated that courts should "not use state law effectively to undo CERCLA's remedial design—a design meant to protect the environment, not parties that dumped hazardous waste for years." *NCR Corp.*, 768 F.3d at 712. The Court explained that it had previously reversed where a "district court allowed [the plaintiff] to collect contribution under Illinois's contribution statute even though it was not available under CERCLA," because the plaintiff had availed itself of the state statute in "an attempt to evade CERCLA's contribution

---

[4] The Court notes that, given the lack of certainty regarding which state law statute of limitations would apply and when the cause of action would accrue under state law, it is possible that, even if CERCLA did not preempt as to the statute of limitations, the ELA claim might nonetheless be untimely. The Court will not reach or resolve those state law questions given the conclusion that CERCLA's three-year statute of limitations applies.

14

mechanisms." *Id.* (citing *PMC, Inc. v. Sherwin-Williams Co.*, 151 F.3d 610 (7th Cir. 1998)). That is the circumstance the Court is faced with here: Refined Metals is invoking the ELA to recover costs that it could not recover under CERLA.

Furthermore, applying a state law statute of limitations that would permit Refined Metals to proceed with its claims would frustrate the Congressional purpose of providing uniform and swift resolution in environmental cleanup cases. *See Refined II*, 937 F.3d at 932 (noting that the text of CERCLA "demonstrates Congress's intention to encourage parties that have reached even a partial settlement with respect to a contaminated site to act expeditiously in identifying costs, seeking compensation where necessary and completing the required cleanup"); *Niagara Mohawk Power*, 596 F.3d at 138 ("[CERCLA] Section 113 is intended to standardize the statutory right of contribution and, in doing so, avoid the possibility of fifty different state statutory schemes that regulate the duties and obligations of non-settling [potentially responsible parties] who might be viewed as tortfeasors under the law of any particular state[, and] . . . was intended to provide the only contribution avenue for parties with response costs incurred under CERCLA."). Where, as here, applying a state law would do "major damage" to Congressional design and federal interests, the Court must find preemption. *See Patriotic Veterans*, 736 F.3d at 1050.

The Court is cognizant of the general presumption against preemption and the savings clause that seems to evidence an intent to avoid construing CERCLA as preempting state law causes of action. However, neither of those things are sufficient to overcome the direct conflict at issue in this case. Again, the savings clause at issue here states that "[n]othing in this chapter shall be construed or interpreted as preempting any State from imposing any additional liability or requirements with respect to the release of hazardous substances within such State." 42 U.S.C. § 9614(a). Indeed, the Court's limited holding here does nothing to deteriorate the liability or

15

requirements imposed by the state of Indiana through the ELA or its general statute of limitations rules. Instead, the Court merely recognizes that those rules cannot be applied in this case without directly conflicting with CERCLA and standing as an obstacle to the achievement of federal Congressional objectives. In this situation, the ELA is not being invoked to impose additional liability, but instead is being invoked as an alternative means for determining the same liability that Refined Metals unsuccessfully sought to impose with its federal claim. Moreover, a savings clause cannot be used to circumvent the requirements of the federal statute that contains the savings clause, including the temporal limit on seeking contribution for cleanup costs. *See PMC, Inc.*, 151 F.3d at 618 ("A savings clause is not intended to allow specific provisions of the statute that contains it to be nullified. CERCLA's savings clause must not be used to gut provisions of CERCLA.").

This case in particular is an extreme example of a plaintiff, unreasonably and for reasons unknown, delaying its decision to seek contribution to cover environmental cleanup costs. The federal and state governments began issuing environmental regulations relevant to the lead industry in the late 1970s. Refined Metals was sued by the EPA and the IDEM for failure to comply with these regulations in 1990. It entered into the Consent Decree, thereby agreeing to pay for cleanup of the Property, in 1998 and, according to its own allegations, has been engaged in various cleanup efforts ever since. This is "a long time to keep an entitlement to reimbursement up in the air," *Refined II*, 937 F.3d at 929, especially where Congress has provided a three-year window for bringing such claims in an effort to carry out its intent that such matters be resolved expeditiously. Not only is Refined Metals' delay inexplicable, but it has resulted in the loss of its statutory right to bring this action under the ELA due to direct conflict preemption, and its claims must be dismissed.

16

## IV.
### CONCLUSION

Based on the foregoing, Refined Metals' action is untimely. NL's Motion to Dismiss, [8], is **GRANTED** and this action is **DISMISSED WITH PREJUDICE**. Final judgment shall issue accordingly.

Date: 3/25/2020

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**